778 F.2d 1374
 13 Bankr.Ct.Dec. 1375, Bankr. L. Rep. P 70,886
 In re 405 N. BEDFORD DR. CORP., a California Corporation, Debtor.
James FARBER and Lucy Farber Mattingly, Plaintiffs-Appellants,
v.
405 N. BEDFORD DR. CORP., a California Corporation,
Defendant-Appellee.
 No. 84-5939.
 United States Court of Appeals,
 Ninth Circuit.
 Argued and Submitted March 7, 1985.
Decided Dec. 17, 1985.
 
 James Dale, Louise D. Dale, Dale & Dale, Los Angeles, Cal., for plaintiffs-appellants.
 Peter R. Stoll, Los Angeles, Cal., for defendant-appellee.
 An Appeal from the United States District Court for the Central District of California.
 Before FLETCHER, PREGERSON and HALL, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 FACTS
 
 1
 On May 1, 1979, Elliot Feldman, the owner of a piece of property in Beverly Hills known as 405 North Bedford Drive, executed promissory notes in favor of James Farber; Lucy Farber Mattingly; United California Bank and Isaac Pacht, as co-trustees under the will of Simeon Aller;[1] and Vivian Kaye ("the beneficiaries"). Feldman secured all four notes by a single first deed of trust on the property. The deed of trust provided that all outstanding debt would be "accelerated"--currently due and payable--upon Feldman's failure to make a monthly payment.
 
 
 2
 Sometime around February 1982, Feldman began failing to make the required monthly payments to the four beneficiaries under the first deed of trust. Consequently, on April 13, 1982, the beneficiaries moved in California Superior Court for the appointment of a receiver, and on May 14, 1982, the court appointed one.
 
 
 3
 In the meantime, DMG, Ltd., a partnership owning virtually all of the property adjacent to 405 North Bedford Drive, created a wholly owned subsidiary, 405 N. Bedford Dr. Corp ("the corporation"). On April 26, 1982, the corporation purchased 405 North Bedford Drive ("the property") from Feldman. At that time, the property was also encumbered by liens junior to the first deed of trust.
 
 
 4
 After four months of unsuccessful negotiations with the junior trust deed holders on the property, the corporation filed a voluntary petition under chapter 11 of the Bankruptcy Code on August 27, 1982. This petition activated the "automatic stay" provided by section 362 of the Bankruptcy Code,[2] and prevented the beneficiaries under the first trust deed from pursuing a foreclosure.
 
 
 5
 On September 29, 1982, Farber and Mattingly filed a petition for relief from the automatic stay.[3] The bankruptcy court granted their request, permitting them to pursue a foreclosure. On February 2, 1983, First Interstate and Kaye also filed a petition for relief from the automatic stay, which the bankruptcy court likewise granted.
 
 
 6
 But, due to problems among themselves, the beneficiaries had not yet foreclosed on October 14, 1983, when the corporation filed its proposed plan of reorganization with the bankruptcy court. On November 17, 1983, the corporation also filed a motion to "cure" the defaults under the first deed of trust pursuant to 11 U.S.C. Sec. 1124.[4] In response, on December 2, 1983, the four beneficiaries filed a motion to dismiss the bankruptcy case pursuant to 11 U.S.C. Sec. 1112(b).[5] The bankruptcy court ruled on both motions on December 28, 1983. The court granted the corporation's request to cure the defaults and denied the beneficiaries' motion to dismiss. Farber and Mattingly appealed to the United States District Court, but the district court affirmed the bankruptcy court's decision on April 30, 1984. Farber and Mattingly then appealed to this court.
 
 
 7
 Meanwhile, on January 31, 1984, the bankruptcy court entered an order confirming the corporation's proposed plan of reorganization. On March 1, 1984, Farber and Mattingly filed with the bankruptcy court an application to stay the order confirming the plan. They also requested "that the Court make whatever Order or Orders as are necessary to protect [their] position and preserve to [them] the benefits which would be obtained upon successful determination of ... the Appeal from the Order denying the motion to dismiss the chapter 11 proceedings and the contemplated appeal from the Order Confirming the Debtor's Plan." The bankruptcy court denied their request for a stay on March 5, 1984.
 
 
 8
 On April 1, 1984, Farber and Mattingly appealed to the district court from the bankruptcy court's order confirming the plan. This appeal is presently before U.S. District Judge Irving Hill, who has stayed the proceedings pending our decision.
 
 DISCUSSION
 
 9
 I. Finality in Bankruptcy Proceedings.
 
 
 10
 Section 104(a) of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 333, governs our jurisdiction in this case. Section 104(a) added a new section 158 to Title 28, replacing 28 U.S.C. Sec. 1293 (1982), formerly governing our jurisdiction in bankruptcy appeals. Under section 158(d), we have jurisdiction of "appeals from all final decisions, judgments, orders, and decrees" of district courts reviewing decisions of bankruptcy courts. 98 Stat. at 341 (to be codified at 28 U.S.C. Sec. 158(d)).
 
 
 11
 Because former section 1293 also referred to final judgments, orders, or decrees as the basis for appellate court jurisdiction in bankruptcy cases, our previous decisions discussing finality under section 1293 are applicable in this case involving section 158. Teleport Oil Co. v. Security Pacific National Bank (In re Teleport Oil Co.), 759 F.2d 1376, 1377 n. 1 (9th Cir.1985).
 
 
 12
 Under former section 1293, "we adopted a test that emphasizes the need for immediate review, rather than whether the order is technically interlocutory, in determining what is appealable as a final judgment in bankruptcy proceedings." White v. White (In re White), 727 F.2d 884, 885 (9th Cir.1984) (citing Mason v. Integrity Insurance Co. (In re Mason), 709 F.2d 1313 (9th Cir.1983)). Those orders that " 'may determine and seriously affect substantive rights' and 'cause irreparable harm to the losing party if it had to wait to the end of the bankruptcy case' " are immediately appealable, In re Mason, 709 F.2d at 1316 (quoting R. Levin, Bankruptcy Appeals, 58 N.C.L.Rev. 967, 985-86 & n. 140 (1980)), so long as the orders "finally determine the discreet [sic] issue to which [they are] addressed...." Four Seas Center, Ltd. v. Davres, Inc. (In re Four Seas Center, Ltd.), 754 F.2d 1416, 1418 (9th Cir.1985). But "[w]hen further proceedings in the bankruptcy court will affect the scope of the order, the order is not subject to review in this court under [section 158]." Id.
 
 
 13
 In the instant case, the district court affirmed a bankruptcy court order which resolved two separate motions. We conclude that neither the bankruptcy court's denial of the beneficiaries' motion to dismiss the chapter 11 proceedings nor its grant of the corporation's motion to cure the defaults under the first deed of trust is final and reviewable in this court.
 
 
 14
 II. Denial of Motion to Dismiss for Bad Faith Under 11 U.S.C. Sec. 1112.
 
 
 15
 Farber and Mattingly brought a motion to dismiss the bankruptcy case under 11 U.S.C. Sec. 1112 on the ground that the corporation filed for bankruptcy under chapter 11 in bad faith. Section 1112 provides that the bankruptcy court "may dismiss a case under this chapter ... for cause...." 11 U.S.C. Sec. 1112(b) (1982) (amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, Sec. 505, 98 Stat. 333, 384-85). A number of courts have held that bad faith--i.e., filing under chapter 11 with the intent to abuse the reorganization process--is sufficient "cause" under section 1112 to dismiss a case. See, e.g., Meadowbrook Investors' Group v. Thirtieth Place, Inc. (In re Thirtieth Place, Inc.), 30 B.R. 503, 505 (Bankr. 9th Cir.1983); In re Spenard Ventures, Inc., 18 B.R. 164, 166 (Bankr.D.Alaska 1982). In the instant case, the bankruptcy court denied the beneficiaries' motion to dismiss, and the district court affirmed. The beneficiaries argue that the denial of their motion to dismiss is appealable to this court under the finality analysis we outlined above. We disagree.
 
 
 16
 The beneficiaries are not threatened with the possibility of irreparable harm if they cannot immediately appeal the district court's affirmance of the denial of their motion to dismiss. Although the beneficiaries will have to continue their participation in the reorganization process, their interests will be protected while they participate. See, e.g., 11 U.S.C. Secs. 361, 363(e) (right to adequate protection); 11 U.S.C. Sec. 362(d) (power to attain relief from automatic stay); 11 U.S.C. Sec. 363(f) (protecting interests of secured creditors when property is sold); 11 U.S.C. Sec. 1104 (power to have trustee or examiner appointed); 11 U.S.C. Sec. 1121 (power to propose a plan if one has not been proposed or approved within certain time periods). As secured creditors, the beneficiaries can protect their interests by moving the bankruptcy court to provide them adequate protection as defined by 11 U.S.C. Sec. 361, or by seeking relief from the automatic stay under 11 U.S.C. Sec. 362(d) if such protection is not provided.
 
 
 17
 Two prior decisions in which we recognized the potential for irreparable harm if similar bankruptcy orders were not immediately appealable are distinguishable from this case. In Mason v. Integrity Insurance Co. (In re Mason), 709 F.2d 1313 (9th Cir.1983), we held that the bankruptcy court's denial of the debtor's motion to vacate an order for relief entered on an involuntary bankruptcy petition was final and reviewable. Id. at 1315-18. We observed that "an order for relief [similar to a denial of a motion to dismiss] can be viewed as merely a decision that a bankruptcy case can continue" and does not meet the usual standard of finality. Id. at 1316. Nevertheless, we held that the denial of the debtor's motion to vacate an order for relief was final in light of the unique nature of bankruptcy procedure and therefore reviewable by this court. Id.
 
 
 18
 In reaching this decision, we made two important observations. First, we noted that the decision to enter an order for relief is prefaced by procedures similar to that preceding other final judgments in civil and criminal litigation. Id. at 1317. The petition for relief is treated as a complaint which the debtor must answer to avoid default; the debtor may respond to the petition by filing motions similar to those under Fed.R.Civ.P. 12; either side may conduct discovery; and the bankruptcy court is obliged to determine the issues of a contested petition at the earliest practicable time. Bankr.R. 1010-1013. We found that this procedural framework evidenced "a recognition by the drafters of the rules that an order for relief should be an appealable final order." 709 F.2d at 1317.
 
 
 19
 Second, we found that none of the other protections for debtors under the Bankruptcy Code were adequate to prevent a debtor from suffering irreparable injury through loss of property where the bankruptcy court had granted an order for relief on an involuntary petition. Id. at 1317-18.
 
 
 20
 Neither of these two reasons for finding final and appealable a bankruptcy court's order that the case proceed where the creditors have filed an involuntary petition, as in Mason, applies where the debtor has filed a voluntary petition, as in the instant case.
 
 
 21
 First, the debtor's commencement of a voluntary case involves none of the adversary procedures that the Code requires for involuntary petitions. The mere filing of the voluntary petition constitutes an order for relief. 11 U.S.C. Sec. 301. The bankruptcy court does not approve the voluntary petition and the creditors are not given the chance to object. Bankr.R. 1002, Official Form 1. The procedures preceding a voluntary petition are thus dissimilar to those preceding final judgments in ordinary civil and criminal litigation; they do not indicate an intent on the part of the drafters that the denial of a motion to dismiss a voluntary petition be an appealable final order.
 
 
 22
 Second, as noted above, the Code contains substantial protection for the creditors, adequate to prevent them from suffering irreparable injury to their property interests while the bankruptcy case proceeds. See, e.g., 11 U.S.C. Secs. 361, 362(d), 363(e)(f), 1104 and 1121. Consequently, Mason 's holding that the denial of the debtor's motion to vacate an order for relief in an involuntary case is a final order does not require us to find that the denial of the creditors' motion to dismiss in a voluntary case is also final.
 
 
 23
 The other case in which we found a similar order final and appealable, Crocker National Bank v. American Mariner Industries, Inc. (In re American Mariner Industries, Inc.), 734 F.2d 426 (9th Cir.1984), is also distinguishable. In American Mariner, we held that an order denying the creditor's petition for relief from the automatic stay for lack of adequate protection, see 11 U.S.C. Sec. 362(d)(1), was final and appealable. Id. at 428-29.
 
 
 24
 Although the denial of a petition for relief from the automatic stay, like the denial of a motion to dismiss, basically permits the bankruptcy case to proceed under the debtor's control, there is a crucial difference between the two rulings. When a creditor moves to dismiss for bad faith filing, he need make no showing of harm to his property interests from the continuance of the bankruptcy case. On the other hand, his request for relief from the automatic stay for lack of adequate protection is premised on a showing of imminent harm to his property interests. It follows that a denial of the creditor's petition for relief from the automatic stay will frequently cause him irreparable harm if he has to wait to the end of the bankruptcy case to appeal.
 
 
 25
 In addition, the Bankruptcy Code explicitly provides for expedited and ex parte proceedings on complaints for relief from the automatic stay. 11 U.S.C. Sec. 362(e)(f). The American Mariner court relied on these provisions to conclude that "Congress intended the courts to conclusively and expeditiously adjudicate, apart from the bankruptcy proceedings as a whole, complaints for relief from the automatic stay." 734 F.2d at 429. The lack of similar provisions for motions to dismiss under 11 U.S.C. Sec. 1112 indicates a contrary intent on the part of Congress.
 
 
 26
 In short, our decision in American Mariner does not lead us to conclude that a denial of a creditor's motion to dismiss is final and appealable. On the contrary, because American Mariner grants the creditor the right to an immediate appeal when his property interests are tangibly threatened, our finding that the motion to dismiss is not immediately appealable to this court will not cause him irreparable harm. He can petition for relief from the automatic stay, as the beneficiaries did in this case, and immediately appeal the bankruptcy court's denial of that petition to the district court and then to this court.
 
 
 27
 In addition, classifying the denial of a motion to dismiss for bad faith filing as a final order would have an undesirable impact on the reorganization process. Creditors would be forced to appeal the bad faith filing issue to this court immediately, or forego appealing the issue to this court entirely. Bankr.R. 8001(a), 8002(a) (must file notice of appeal within 10 days of final order; Fed.R.App.P. 4(a)(1)). If an immediate appeal to this court is permitted, the bankruptcy court is then faced with the difficult choice of whether to proceed with the reorganization process knowing that the appeal of the bad faith filing issue may render further reorganization proceedings unnecessary, or stay the reorganization pending our decision. If the reorganization process is stayed and we affirm the denial of the motion to dismiss, then the reorganization process is unnecessarily delayed. We find no potential for irreparable harm to the beneficiaries in this case. Accordingly, the denial of the motion to dismiss for bad faith filing is not a final order under our previous decisions, and we lack jurisdiction over this portion of the beneficiaries' appeal.
 
 
 28
 III. Grant of Motion to Cure Defaults under 11 U.S.C. Sec. 1124.
 
 
 29
 At the time the bankruptcy court denied Farber and Mattingly's motion to dismiss, it granted the corporation's motion to cure the defaults under the first deed of trust pursuant to 11 U.S.C. Sec. 1124. Section 1124 provides that a class of claims or interests is "impaired" under a plan unless the plan:
 
 
 30
 (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default--
 
 
 31
 (A) cures any such default that occurred before or after the commencement of the case under this title....
 
 
 32
 11 U.S.C. Sec. 1124 (1982) (amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, Sec. 508, 98 Stat. 333, 385).
 
 
 33
 The importance to the debtor of curing defaults to make a class of creditors unimpaired is this: if a class is not impaired under a plan, then it is deemed to have accepted the plan and the debtor need not solicit votes approving the plan from that class. 11 U.S.C. Sec. 1126(f) (1982) (amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, Sec. 510, 98 Stat. 333, 386).
 
 
 34
 Because the power to cure defaults under section 1124 is relevant only in the context of a plan of reorganization, an order granting the debtor the power to cure is contingent upon confirmation of the entire plan. If the plan fails to meet any of the requirements for confirmation, see 11 U.S.C. Sec. 1129(a), an order granting the debtor the power to cure will be ineffectual. Therefore, the order granting the motion to cure does not finally determine the discrete issue to which it is addressed. See In re Four Seas, 754 F.2d at 1418. Because "further proceedings in the bankruptcy court will affect the scope of the order, the order is not subject to review in this court under [section 158]." Id. Consequently, we also lack jurisdiction over that portion of the district court's order affirming the bankruptcy court's grant of the debtor's motion to cure. We therefore DISMISS the appeal. Each side to bear its own costs and attorneys' fees.[6]
 
 
 
 [1]
 First Interstate Bank and Lazare Bernhard have since replaced United California Bank and Isaac Pacht as co-trustees of the Aller trust
 
 
 [2]
 Section 362 provides that the filing of a petition under chapter 11 "operates as a stay, applicable to all entities, of--(1) the commencement or continuation ... of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title...." 11 U.S.C. Sec. 362(a)(1) (1982) (amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, Sec. 441, 98 Stat. 333, 371)
 
 
 [3]
 Section 362(d) provides that:
 On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
 (2) with respect to a stay of an act against property under subsection (a) of this section, if--
 (A) the debtor does not have an equity in such property; and
 (B) such property is not necessary to an effective reorganization.
 11 U.S.C. Sec. 362(d) (1982) (amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, Sec. 441, 98 Stat. 333, 371).
 
 
 [4]
 Section 1124 provides that
 [A] class of claims or interests is impaired under a plan unless, with respect to each claim or interest of such class, the plan--
 (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default--(A) cures any such default that occurred before or after the commencement of the case under this title....
 11 U.S.C. Sec. 1124 (1982) (amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, Sec. 508, 98 Stat. 333, 385).
 
 
 [5]
 Section 1112(b) provides that
 [O]n request of a party in interest, and after notice and a hearing, the court may ... dismiss a case under this chapter, ... for cause, including--
 (2) inability to effectuate a plan....
 11 U.S.C. Sec. 1112(b) (1982) (amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, Sec. 505, 98 Stat. 333, 384-85).
 
 
 [6]
 Counsel for the corporation requested double costs and attorneys fees under 28 U.S.C. Secs. 1912 & 1927 (1982), claiming that the beneficiaries' appeal is frivolous because it is moot
 Even though a motions panel of this court had previously denied the corporation's motion to dismiss for mootness, the corporation again argues before this panel that we lack jurisdiction because the appeal is moot. We agree with the motions panel that the beneficiaries' appeal is not moot for failure to request the bankruptcy court to stay its order pending appeal. As noted supra p. ----, while their appeal to the district court was pending, Farber and Mattingly did request the bankruptcy court to "make whatever Order or Orders as are necessary to protect [their] position and preserve to [them] the benefits which would be obtained upon successful determination of ... the Appeal from the Order denying the motion to dismiss the Chapter 11 proceedings...."
 In light of the fact that both this panel and a motions panel have held that the appeal is not moot, we reject as frivolous the corporation's request for costs and fees.